# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 954 | **DATE** | 12/19/2000 |
| **CASE TITLE** | Yvette Hawkins v. Maxiums, Inc., et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5)
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Status hearing held. Status hearing continued to 1/4/01 at 10:00 a.m. Enter memorandum opinion and order. Defendant's motion for summary judgment is granted. (28-1)

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | DEC 21 2000 date docketed | |
| ✓ | Docketing to mail notices. | | | 37 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| TP | courtroom deputy's initials | 00 DEC 21 AM 11:41 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

YVETTE HAWKINS

    Plaintiff,

v.

MAXIMUS, INC., and TIMOTHY BANNISTER,

    Defendants.

No. 99 C 0954
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Yvette Hawkins replaced Timothy Bannister as the Systems Manager for Maximus, Inc., which operates the Cook County Child Support Enforcement Project in conjunction with the Illinois Department of Public Aid. Bannister interviewed the candidates for the job and singled Hawkins out as the best one. Bannister left Maximus's employ on July 24, 1998, and returned a few days later on August 1, 1998 as an independent contractor. Bannister's deal with Maximus was to provide systems training and technical assistance for one month; he was to train his replacement, Hawkins.

Since Bannister was working another job in August, 1998, his consulting work for Maximus occurred during off hours. Hawkins spent early mornings, late evenings (sometimes as late as 10 p.m.) and Saturdays with Bannister to learn the computer systems. Bannister complimented Hawkins; told her he wanted to take her out; told her she "owed" him for the job; told her he was sexually frustrated and had high sexual needs; told her that Jeannie Wilson, the Project Manager, sexually harassed him; told her that everyone was sleeping with everyone else at Maximus. On occasion, Bannister seemed to be following Hawkins home in his car. On August 29, 1998, Bannister raped Hawkins.

Maximus moves for summary judgment on the Title VII sexual harassment claim.[1] 42 U.S.C. § 2000e, *et seq*. I view the facts in the light most favorable to Hawkins to determine whether there are no genuine issues of material fact and whether Maximus is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513 (1986).

Employer liability in sexual harassment cases is dependent on whether the harasser was a supervisor or co-worker. *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 2292-2293 (1998). Maximus says Bannister was not Hawkins's supervisor since he had no authority to hire, fire, discipline, transfer, promote or evaluate Hawkins. Hawkins says Bannister is the one who in fact hired her, and Bannister is the one who determined her training schedule, gave her assignments and reported on her progress to Wilson. It is clear that Bannister had at least some authority with respect to the hiring of Hawkins. However, I agree with Maximus that the relevant time period starts after August 1, 1998, when the harassment actually occurred and when both Hawkins's and Bannister's employment relationships with Maximus (and vis-a-vis each other) were different than they were a few days earlier. If there were allegations of harassment in the hiring process, the relevant time period would be different. Hawkins does not dispute that as of August 1, 1998, Bannister did not have the authority to fire, promote, discipline, or transfer her; and Hawkins does not dispute that during the relevant period Bannister was an independent contractor with a one-month term. Plaintiff's L.R. 56.1(b)(3) Response, ¶¶ 22, 27.

The question is whether Bannister, by giving Hawkins assignments, reporting on her progress to Wilson, and telling Hawkins when she had to work, exercised the authority of a Title VII "true

---

[1] The state law assault claim against Bannister is not at issue here.

2

supervisor." If his dominion over Hawkins rises only to "low-level" supervision, then for Title VII purposes, Bannister shall be treated as a co-worker. *Parkins v. Civil Constructors of Illinois, Inc.*, 163 F.3d 1027, 1033 (7th Cir. 1998). To be a true supervisor, one must be entrusted with at least some of the power to hire, fire, demote, promote, transfer, or discipline -- authority of a substantial magnitude. *Id.* at 1034. "Absent an entrustment of at least some of this authority, an employee does not qualify as a supervisor." *Id.*

Bannister was not entrusted with supervisory authority, as understood in the Title VII context. He gave her assignments and kept her late, but this is not the ability to alter terms and conditions on the magnitude of demotion, promotion or discipline. Hawkins complained about her work schedule to Wilson, and Wilson responded, albeit minimally. Plaintiff's L.R. 56.1(b)(3) Response, ¶¶ 31-32. This suggests that any immediate authority Bannister had over Hawkins's schedule was not binding; Hawkins understood that Wilson controlled the schedule. A trier of fact could not reasonably find Bannister to be a proxy for Maximus itself. Therefore, I treat Hawkins's claim as one for co-worker harassment.

Maximus is liable for co-worker harassment if it was negligent in having failed to discover and prevent Bannister's conduct. *Zimmerman v. Cook County Sheriff's Department*, 96 F.3d 1017, 1018 (7th Cir. 1996). The parties agree that Hawkins "cannot withstand summary judgment without presenting evidence that she gave the employer enough information to make a reasonable employer think there was some probability that she was being sexually harassed." *Id.* at 1019. On September 4, 1998, Hawkins spoke with Wilson and accused Bannister of attempted rape, clearly putting Maximus on notice. After September 4, Maximus: requested a change of locks and security codes to prevent Bannister from having access to the offices; escorted Hawkins to the Office of Internal

3

Affairs/Bureau of the Inspector General of Illinois Department of Public Aid to launch an investigation; and provided Hawkins with information concerning Maximus's Employee Assistance Program.[2] There is no allegation of any harassment occurring after August 29, 1998, and Hawkins does not argue for liability attaching to Maximus for any post-August 29, 1998 conduct.[3]

The parties dispute whether Maximus was on notice prior to August 29, 1998. Hawkins says (and it is her version that matters at summary judgment) that she told Wilson that Bannister was following her home and that she was "spooked" by it. She told Wilson that she thought Bannister was a "pervert." She also told Wilson that Bannister was complimenting her, telling her she owed him for the job and telling her he liked black girls, not white girls. Wilson recalls Hawkins asking whether Wilson had any experience with men in the workplace giving her compliments. The parties agree that no one anticipated the rape; indeed, even in Hawkins's detailed recitation of the facts, the rape is a shocking escalation from what before had been merely a few uncomfortable moments. Hawkins told the police that Bannister did not do or say anything inappropriate, other than compliment her, prior to the rape.[4]

The complaints Hawkins made to Wilson are sufficient to put the employer on notice that Bannister was a boor, but are not sufficient to inform Maximus that a severe alteration of the terms and conditions of Hawkins's employment was imminent. I do not mean to suggest that Maximus would be liable only if it knew that the rape was about to happen; it must have been on notice of sexual harassment in general – severe gender-based conduct that subjectively and objectively alters

---

[2] The Cook County State's Attorney's Office declined to prosecute Bannister.

[3] *See* Plaintiff's Brief in Response to Defendant's Motion for Summary Judgment, p. 14 ("Hawkins' claim is based on Maximus' refusal to take action prior to the rape as a measure of prevention").

[4] Bannister says he had consensual sex with Hawkins.

4

the terms and conditions of employment. Here, Maximus knew only that Bannister was making Hawkins work late, and making suggestive comments to her. The knowledge that Bannister seemed to follow Hawkins home is not enough to put his conduct over the line. As far as Maximus knew, Bannister was a creep who was leaving in a few weeks, not a sex-based discriminator. Absent notice, Maximus is not liable for sexual harassment.[5]

## CONCLUSION

I apply the co-worker standard for employer liability under Title VII to the facts of this case and find that Maximus did not know, nor should it have known, that Hawkins was being sexually harassed. Therefore, defendant's motion for summary judgment [28-1] is granted. This terminates Maximus from the case, leaving only the state law claim against Bannister. I retain my supplemental jurisdiction over that count.

ENTER:

James B. Zagel
United States District Judge

DATE: 12-19-00

---

[5] Finally, there is Maximus's alternative argument that its failure to act did not cause the harassment. In *Zimmerman, supra*, 96 F.3d at 1019, the Seventh Circuit noted that if the injury would in all likelihood have occurred no matter what the employer did short of immediate separation of the two individuals, the employer's failure to act did not cause the injury and there is no liability. In that case, the plaintiff did not ask to be separated immediately, therefore even if the defendant began an investigation, the assault probably would have occurred anyway. On this record, and at this stage, I cannot infer that nothing less than separation would have prevented the rape. I do not know how Bannister would have reacted had Wilson told him to cut out the innuendo, but I cannot say he would have assaulted Hawkins anyway. Therefore, I reject Maximus's causation argument.

5